IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STACEY FOWLER, : | |
| : | Case No. 2:23-cv-3172 |
| **Plaintiff,** : | |
| : | **Chief Judge Algenon L. Marbley** |
| v. : | |
| : | **Magistrate Judge Elizabeth Preston Deavers** |
| AT&T INC., *et al.*, : | |
| : | |
| **Defendants.** : | |

### OPINION & ORDER

This matter is before this Court on Defendants' Motion to Compel Arbitration. (ECF No. 9). For the following reasons, the Motion is **GRANTED**, and this case is hereby **STAYED** pending arbitration. Plaintiff's Motion to File Surreply (ECF No. 18) is also **GRANTED**. The parties are **ORDERED** jointly to file a status report **every six (6) months** indicating the status of arbitration.

### I.  BACKGROUND

Plaintiff Stacey Fowler began work for AT&T on May 21, 1990. (ECF No. 1 ¶ 6). Plaintiff alleges that she consistently received glowing reviews and promotions throughout her employment. (*Id.* ¶¶ 21, 27). In 2021, Plaintiff became the Ohio Director of Access and the highest-ranking Black female employee of AT&T Ohio. (*Id.* ¶ 24).

According to AT&T's records, in December 2011, AT&T sent an email to Plaintiff indicating that AT&T had created an arbitration process for its employees and asking Plaintiff to review the linked Management Arbitration Agreement ("MAA"). (ECF No. 9-1 ¶ 11). The email informed Plaintiff that if she wished to opt out of the MAA, she had until February 6, 2012 to do

so.  (*Id.*).  AT&T's records, however, indicate that Plaintiff accessed the MAA, scrolled through the agreement, and clicked the "Review Completed" button, but did not opt out.  (*Id.* ¶ 6).

The MAA that Plaintiff reviewed indicates that it "applies to any claim that [Fowler] may have against . . . any AT&T company," including those "arising out of or related to [Fowler's] employment or termination of employment with the Company," and requires that "any dispute to which this Agreement applies . . . be decided by final and binding arbitration instead of court litigation."  (*Id.* at 13).  Relevant to the Parties' arguments here is the MAA's provision on assignment of a neutral arbitrator:

> The arbitration will be held under the auspices of a third party which will manage the arbitration process: JAMS, Inc. . . . The arbitration shall be held in accordance with its Employment Arbitration Rules & Procedures (and no other JAMS rules) .
> . . . Unless you and the Company mutually agree otherwise, the Arbitrator shall be either a retired judge, or an attorney who is experienced in employment law and licensed to practice law in the state in which the arbitration is convened (the "Arbitrator), selected pursuant to JAMS rules or by mutual agreement of the parties.
>
> \*\*\*
>
> Unless each party to the arbitration agrees in writing otherwise, the location of the arbitration proceeding shall be a facility chosen by JAMS within the county (or parish) where you work or last worked for the Company.

(*Id.* at 14-15).

After a reduction-in-force in late 2022, during which Plaintiff oversaw the firing of several white, male managers and their subordinates, one terminated employee filed a reverse discrimination claim.  (ECF No. 1 ¶ 58).  As a result, AT&T began to investigate Plaintiff.  (*Id.* ¶ 51).  A few weeks after Plaintiff was interviewed in connection with the investigation, she found a threatening note in her office: "YOU STUPID **NIGGER** BITCH. IF WE CAN'T TAKE YOU **DOWN** WILL TAKE YOU **OUT.**"  (*Id.* ¶¶ 75-78) (emphasis and full expletive in original).  Plaintiff's business card was attached to the threat, with her title crossed out.  (*Id.* ¶ 78).  AT&T recommended that Plaintiff work from home while it investigated the note.  (*Id.* ¶¶ 80-85).  Shortly

thereafter, however, AT&T terminated Plaintiff in connection with the reverse-discrimination claim. (*Id.* ¶¶ 98-99).

Plaintiff immediately filed a charge of discrimination against AT&T with the Ohio Civil Rights Commission. (ECF No. 11-1 ¶ 3). When Plaintiff's counsel sent a litigation hold notice to AT&T in June 2023, AT&T counsel, Jaime Mata, responded that Plaintiff was bound by an arbitration agreement. (ECF No. 11-2 ¶¶ 2-3). After contacting the designated arbitral forum, JAMS Inc., regarding the availability of neutrals, Plaintiff's counsel filed this lawsuit. (*Id.* ¶¶ 4-5). On December 1, 2023, Defendants filed this Motion to Compel Arbitration. (ECF No. 9). The motion is now ripe for review.

## II. LAW & ANALYSIS

### A. Parties' Arguments

Defendants ask this Court to compel arbitration under the FAA and stay proceedings pending arbitration. (ECF No. 9). In their Motion to Compel, Defendants primarily argue that the MAA is valid and enforceable because they offered Plaintiff the MAA, she accepted it, and the agreement is supported by valid consideration. (*Id.* at 8-9). Defendants also maintain that the claims asserted in the Complaint fall squarely within the scope of the MAA. (*Id.* at 10).

Plaintiff does not challenge the MAA's formation or the scope of claims that it covers. She argues, however, that the agreement is unenforceable because no arbitrator who meets all the agreement's requirements exists. (ECF No. 11). Specifically, Plaintiff argues that AT&T's unilaterally drafted MAA requires a JAMS, Inc. arbitrator that is: (1) a retired judge or a lawyer; (2) barred in Ohio; and (3) has expertise in employment law. (*See id.*). Because none of JAMS's panelists is barred in Ohio, Plaintiff believes that the MAA is unenforceable. (*Id.* at 6-10). In

3

response, Defendants primarily argue that Plaintiff simply misreads the plain language of the MAA to preclude the three retired judges on JAMS's panel. (ECF No. 13).

Plaintiff also argues that the MAA is unconscionable because it impermissibly limits discovery. (*Id.* at 10-11). In support of this argument, Plaintiff filed a Motion for Leave to File Surreply (ECF No. 18) after Defendants filed a Motion for Protective Order Staying Discovery until this Court decided whether to compel arbitration because traditional discovery is much broader than the discovery allowed by the MAA. (ECF No. 15). Defendants object to the Motion for Leave to File, arguing, in part, that it is untimely. (ECF No. 22). Because Plaintiff filed her Motion for Leave only two weeks after Defendants filed their Motion for Protective Order, and the Surreply responds to new representations regarding the scope of discovery under the MAA, Plaintiff's Motion for Leave to File is **GRANTED**. (ECF No. 18).

### B. Court's Analysis

#### 1. *Availability of Neutral Arbitrator*

Turning first to the availability of an arbitrator, as explained above, the MAA requires the following:

> Unless you and the Company mutually agree otherwise, the Arbitrator shall be either a retired judge, or an attorney who is experienced in employment law and licensed to practice law in the state in which the arbitration is convened (the "Arbitrator), selected pursuant to JAMS rules or by mutual agreement of the parties.

(ECF No. 9-1 at 15). In Plaintiff's view, the phrase "who is experienced in employment law and licensed to practice law in the state in which the arbitration is convened" modifies both "a retired judge" and "an attorney." It does not. In contract interpretation, the "last antecedent rule" means that generally, "a limiting clause or phrase" modifies only "the noun or phrase that it immediately follows." *Allen v. United States*, 83 F.4th 564, 568 (6th Cir. 2023). As Defendants point out, this "rule reflects the basic intuition that when a modifier appears at the end of a list, an ordinary reader

4

would apply that modifier only to the item directly before it." *Id.* Applying the last antecedent rule here, it is evident that the agreement permits a retired judge to serve as the neutral, even if the judge is neither barred in Ohio, nor an expert in employment law. This is particularly true because the agreement uses an "either . . . or" structure and separates the phrase "a retired judge" from the phrase "an attorney who is experienced in employment law and licensed to practice law in the state in which the arbitration is convened" with a comma. In contrast, had the comma been placed after "attorney" instead, it might have indicated "that the qualifying language [was] to be applied to all of the previous phrases and not merely the immediately preceding phrase." *In re Tudor*, 342 B.R. 540, 554 (Bankr. S.D. Ohio 2005). Given that three JAMS panelists are retired judges who are available to travel to Columbus, Ohio, (ECF No. 9-1 at 24-25), Plaintiff's unenforceability argument must fail.

Because the plain text of the agreement permits a retired judge—irrespective of bar status or employment expertise—to serve as a neutral arbitrator, there is no need to address the Parties' alternative arguments regarding this Court's authority to appoint another arbitrator or whether the agreement's severability clause could save the agreement from unenforceability.

2. *Unconscionability*

Plaintiff does argue, however, that the agreement is unconscionable because it limits discovery to three depositions and one document production request. (ECF No. 11 at 10-11). But, as Defendants point out, the MAA permits the arbitrator to "grant . . . additional discovery if the Arbitrator finds the party has demonstrated that it needs the requested discovery to adequately arbitrate the claim." (ECF No. 9-1 at 15). Although arbitration discovery procedures may not be "as extensive as in the federal courts, by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of

5

arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991). And discovery limitations are not considered restrictive when the arbitrator has the authority to order additional discovery that the arbitrator considers necessary for the full and fair exploration of the issues in dispute. *See Dortch v. Quality Restaurant Concepts*, LLC., 2013 WL 1789603, at *7 (E.D. Tenn. Apr. 26, 2013). Because the arbitrator is explicitly permitted such latitude here, Plaintiff's argument that the MAA's discovery restrictions are unconscionable must also fail.[1]

### III.  CONCLUSION

In accordance with the foregoing discussion, Defendants' Motion (ECF No. 9) is **GRANTED**, and this case is **STAYED** pending completion of arbitration. Plaintiff's Motion to File Surreply is also **GRANTED**. (ECF No. 18). The parties are **ORDERED** jointly to file a status report **every six (6) months** indicating the status of arbitration.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　**ALGENON L. MARBLEY**
　　　　　　　　　　　　　　　　　　　　　　　　　　　**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:** May 28, 2024

---

[1] Plaintiff also gestures towards her inability to remember acquiescing to the MAA and the possibility that arbitration may "shroud" AT&Ts alleged conduct in secrecy, but she does not mount full arguments. Out of an abundance of caution, AT&T responds to these arguments, but "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003).